16291

PIEDMONT & NORTHERN RY. CO. v. HENDERSON *ET AL.*
(56 S. E. (2d) 740)

*Messrs. Grier, McDonald, Todd & Burns,* of Greenwood, *and Frank E. Harrison,* of McCormick, *for Appellant,*

*Messrs. Nicholson & Nicholson,* of Greenwood, *for Respondents,*

December 10, 1949.

STUKES, Justice.

This action concerns the ownership of a little triangular lot of land which faces north on Calhoun Avenue in the City of Greenwood. On the west is appellant's railroad which lies in a cut about twenty-six feet deep and extends north-westward under Calhoun Avenue and under the intersecting track of Southern Railway. The disputed area is the north-east corner of lot No. 41 on a subdivision map made in 1891 which was exhibit No. 1 at the trial. On the east is lot No. 43 and, according to this old map, each had a street frontage of 91.83 feet. After the subdivision and sale of

YALE LAW LIBRARY

the lots the predecessor of appellant railroad located and built its track. Over the rear portion of lot 43 only a right-of-way was purchased but lot No. 41 (including the disputed area) was acquired in fee, and appellant proved paper title to it. It is apparent that this important difference in acquisitions and the subsequent oversight of it bred the present controversy, as will be seen.

Respondents, or one of them, briefly owned lot No. 43 many years ago and again purchased it in 1937 by deed in which it was described as bounded, quoting, "on the south and west by Greenville, Spartanburg and Anderson Railway Company," which was appellant's predecessor and grantor. It is noted that this description made no reference to lot 41 (which includes the disputed area) as a western boundary and may reasonably be construed to embrace the portion of it northeast of the railway cut and not utilized in the right of way, which is now in contest. On lot 43 it was in fact merely a right of way, which constituted a southern "boundary" of that lot; no distinction was made of the fee in lot 41, to the west of 43. Respondents' grantor had acquired the property eleven years before, in 1926, by master's deed which contained the same description and gave the south and west bounds as G. S. & A. railway not the lot in dispute. Still further back in the chain of title it is noted that this description of lot 43, of which there were frequent transactions, was in use in 1920, when it was described as bounded south and west, not by lot 41 but by the railway.

Something over a month before their purchase in 1937, and apparently preparatory to it, respondents employed a surveyor to survey and plat the property. He surveyed it in accord with the descriptions of record since 1920 and made his plat dated Feb. 19, 1937, which is in evidence as exhibit 20. It shows street frontage of 157.4 feet and the south and west boundary, or rather southwest, to be the edge of the railway right of way, presumably the top of the bank of the cut which is one hundred feet in width. Strangely enough,

the only departure since 1920 from the description represented upon this plat was a mortgage by respondents, dated March 30, 1937, to a building and loan association which referred to frontage of 91.83 feet, an apparent recurrence to the measurements shown on the 1891 subdivision plat which meanwhile had been overlooked by all dealing with the lot. The record indicates however that the southern and western boundary was again given as the railway right of way, so the conflict in this description and the several others of record since 1920 was only as to the street frontage. Moreover, respondents again mortgaged the property to the building and loan association in April 1940 and reverted to the larger frontage shown on their 1937 plat, to which the mortgage description referred. The stated inconsistency in the descriptions of these mortgages, relating to the single feature of street frontage, would seem to be unimportant and the verdict of the jury implies that they so considered it. The evidence shows that the mortgages were prepared by the attorney for the building and loan association and nothing indicates that knowledge of the descriptions in them was brought home to respondents.

The occasion of the 1940 mortgage was to provide funds for the building of a house on the disputed area and respondents then erected a five-room frame residence. At the time of their purchase in 1937 they had erected a fence along the edge of the railroad cut and planted a hedge which the respondent who testified said was for the purpose of cutting off the view and noise of passing trains. The court sustained objection to his further testimony that he warned the section foreman against damaging the hedge.

There was no controversy between the parties until 1944 when respondents' attorney complained in their behalf to appellant about the erosion of the cut bank and, upon investigation of the title by counsel, appellant discovered its record title to the property and subsequently, in 1946, brought this action for possession, for injunction against

the further alleged trespasses of respondents and to require the removal of the fence and dwelling. The answer set up denial, adverse possession and estoppel of appellant by reason of the improvements erected by respondents in plain view of appellant without question or objection by the latter.

Order of reference was refused and the case was tried by jury. However, there was submitted to them by the court only the issue of estoppel and they were fully instructed thereabout. There is no exception to the charge. The jury returned verdict as follows, "We find for the defendants." Meanwhile, motion by appellant for directed verdict was refused, as was a subsequent motion for judgment *non obstante veredicto* or for new trial.

Motion was then made before the court for interpretation of the verdict, to determine specifically the land to which the estoppel extended. An order was passed to the effect that the meaning of the verdict of the jury was that respondents are entitled to the residence, the land on which it stands, that on the front or north lying between it and the street that on the east lying between it and lot 43, which latter respondents unquestionably own, and an area or strip ten feet in width adjacent to the residence on the south and west. This excludes the remainder of the lot extending to the edge of the railroad cut and therefore also excludes the hedge and the fence but the area is small.

There are cross appeals from the order. Appellant contends that under the verdict respondents are entitled only to the residence and the land upon which it is located. Contrariwise, respondents contend that the estoppel found by the jury extends to the edge of the railway cut or right-of-way and includes the fence and hedge erected and planted by respondents in 1937. However, the main appeal is that of the railway company upon alleged error for failure of the court to direct the verdict in its favor and to grant their motion for judgment *non obstante* or new trial. The argument is that there was insufficient evidence of estoppel for the submission

of that issue to the jury. That will be first considered and we shall continue to refer to the railway company as appellant and the defendants as respondents.

It is clear that the evidence warranted submission of the issue of estoppel to the jury and the verdict established the fact of it. Therefore the court did not err in overruling appellant's several motions. Further references will be made to the facts.

Estoppel to assert one's right to property is provable usually by circumstances and may arise from silence. The record before us is bare of any evidence of protest prior to 1944 by appellant against respondents' possession of the property, their planting of the hedge and erection of the fence in 1937 and the residence in 1940. Surely these activities were observable by passersby generally and particularly by the agents and servants of the railway company which operated trains on the adjacent track, although it was in a cut. The fence and hedge at the top of the latter could not but have been seen and there is uncontradicted evidence of one of respondents that appellant's section crew regularly burned off the cut without injury to the hedge. It is inconceivable that the occupant of an adjoining city lot should be ignorant for years of the construction of a five-room dwelling nextdoor or, for that matter, of the erection of a fence and the cultivation of a hedge on the claimed dividing line.

It is plainly inferable from the evidence that appellant, and formerly its predecessor, simply overlooked the fact that the title to lot 41 had been acquired rather than a right of way over it as had been done with respect to the adjoining lot 43. An old map in evidence as exhibit 18, bearing the legend, "The G. S. & A. Ry. Co. Right of Way Map," designates the lot as "W. M. & E. L. Rogers." W. M. & E. L. Rodgers were the grantors of the fee to the G. S. & A., appellant's predecessor, by deed dated May 31, 1911. The date of the right of way map is not in the record but it must have antedated the conveyance by the G. S. & A. to appellant

in 1914 of, quoting from the complaint, "all its property, rights, privileges, franchises and easements." There appears to have been no separate conveyance of the lot to appellant. Appellant's oversight is therefore understandable. The right of way was mapped by appellant's engineering department in 1944 (exhibit 2) and the lot was shown as its property, but this was after respondents had complained of the erosion of the cut on the property and appellant had procured one of its attorneys to examine the title in the courthouse. On the contrary, the old, undated right of way map (exhibit 18) shows no difference between lot 43, over which only right of way was obtained, and the adjoining lot 41 which had been acquired in fee by appellant's predecessor and the most of it consumed by the hundred-foot cut. The map shows the lines of the right of way traversing the original lot lines which were apparently taken from the 1891 subdivision map (exhibit 1).

In their effort to establish title by adverse possession respondents offered several witnesses whose testimony strongly tended to establish appellant's complete and consistent indifference to the property in dispute and the continued absence over the years of any acts of ownership by it. Indeed, appellant offered no evidence in contradiction of this. Boiled down, its defense to respondents' assertion of ownership by estoppel is that it had no notice of respondents' possession and improvement of the property. Whether it did under all of the circumstances in evidence was peculiarly within the province of the jury.

That body visited and viewed the property as part of the case presented and had opportunity to observe the conspicuity of respondents' fence, hedge and house on the premises. For aught in the evidence the structure might have been a skyscraper without attracting the attention of appellant. It awoke only when respondents employed an attorney and through him complained of the erosion of the bank of the cut on the property. Then it investigated the public records and thereafter sued. That was too late to be without injustice to re-

spondents who had meanwhile made substantial expenditures. Respondents' opening of the matter shortly before their possession would have ripened into title bespeaks their *bona fides*.

The main appeal must be overruled in view of the facts and the pertinent authorities which will be briefly discussed.

The action does not fall within the line of cases which hold in effect that a railroad right of way, having been acquired for a public purpose, cannot be lost by prescriptive use or adverse possession of another, unless by the erection of a permanent structure accompanied by notice to the railroad company of an intention to claim adversely to its right, which principle is exemplified by *Atlantic Coast Line R. R. Co. v. Searson*, 137 S. C. 468, 135 S. E. 567, and cases cited. Here is involved the title to land outside the actual right of way of the railroad and originally acquired by it in fee. It was apparently unnecessary for railroad purposes which resulted in nonuser and subsequent loss to the adjoining owners, the respondents, by estoppel, under the evidence and verdict. Nor does this case come within the companion rule to that which has been stated, that the owner of the fee in a railroad right of way has the right to use so much of it as is not in the actual use and occupancy of the railroad company, if not inconsistent with the claim of the right of way for railroad purposes. *Atlanta & C. A. L. Ry. Co. v. Limestone Globe Land Co.*, 109 S. C. 444, 96 S. E. 188. The result of the rule of the cited decisions would appear to be that a railroad company may easier lose by estoppel land owned by it in fee and not used for right of way purposes, as here, than it may lose its right of way.

In connection with the foregoing there must be considered the subsequent case of *Southern Railway Co. v. Day*, 140 S. C. 388, 138 S. E. 870, 873, in which there is an extended discussion of the doctrine of estoppel. A frame building, described as a small, one-story store and doubtless of less size and value than that here, was erected on the railroad right

of way without objection, the opinion states, from any officer or employee of the railroad company, although the building was in plain view of the track. Suit was commenced to require removal in about the same relative time as the present action. After copious citations of text authorities and several early decisions in this State upon the subject of estoppel to assert title, the court concluded that in the case of the erection of permanent structures there is no distinction between a railroad right of way and property owned in fee, and judgment against the company was affirmed. The point need not be further pursued for the purpose of this decision. It was said in the opinion, applicable here: "In the present case the respondent contends that, when the railroad company stood by in silence, while the permanent structure was being erected upon its alleged right of way, knowing that such structure was being so erected, and allowed the party erecting it to invest his money and to build the structure without one word of protest, the company was thereafter estopped, by such silence and acquiescence, from asserting its claim to that part of the right of way upon which such permanent structure was erected. In 10 R. C. L. 782, we find: 'It is a rule almost of universal application that one who stands by and sees another purchase land or enter upon it under a claim of right, and permits such other to make expenditures or improvements under circumstances which would call for notice or protest, cannot afterwards assert his own title against such person.' " And there was quoted with approval the following from *Atlanta & C. A. L. Railroad Co. v. Victor Mfg. Co.,* 93 S. C. 397, 76 S. E. 1091: "The character of the buildings forbids any other conclusion than that the railroad company must have known that the owners were building them under a belief that they had the right to do so. The company knew, or ought to have known, its own rights, for it had in its posession the McKittrick deed." And this terse statement from the old case of *Caldwell v. Williams,* 1831, Bailey, Eq. 175: "If a man stands by, and sees another build a house on his land, without giving notice, he will lose his land."

There remain the cross appeals from the order limiting the application of the verdict to the house, the land occupied by it and ten feet around. It will have to be reversed in respondents' favor for lack of any foundation in the record for so restricting the effect of the verdict. It would exclude the fence and hedge and the land between them and the house, as to which appellant is no less estopped than with respect to the house and the land on which it sits. Incidentally, it is of small consequence because the house is only about twenty feet from the edge of the cut. The issue of estoppel was properly tried by jury and the verdict is conclusive. *Southern Railway v. Howell,* 89 S. C. 391, 71 S. E. 972, Ann. Cas. 1913A, 1070. The court should not attempt to contract it.

The fence and hedge at the edge of the railway cut marked the boundary of respondents' claim and possession. Naturally they would hardly have erected the residence upon the belief that they only owned such of the land as it covered. Recognition was given to this factor by the provision of the order which extended the estoppel to a distance of ten feet around the building. There is little, if any, apparent logic in that and no precedent has been found for it. We think that under the evidence and verdict the respondents own to the railroad cut in accord with their 1937 plat (exhibit 20) which shows iron pipe corners at the edge of the cut, 42.5 feet from the center of the track. Upon remand, judgment will be entered upon the verdict accordingly.

Appellant urges in support of its appeal from the order the authority of Columbia *N. & L. Railroad Co. v. Laurens Cotton Mills,* 82 S. C. 24, 61 S. E. 1089, 1096, 62 S. E. 1119, which it is contended confined the estoppel to the land upon which the buildings in that case were erected on the right of way. However, we do not so understand the case. There were thirty or forty dwelling houses, a store building and an office building constructed by the cotton mill for its use. Of course, they would be useless without adjacent land for ingress, egress and repair which we think must of neces-

sity have been provided by the judgment of the court. The order on rehearing adopted the language of the concurring opinion of Mr. Justice Woods, which was as follows: "The whole extent of the right of way fixed by statute remains unaffected by the judgment, except in so far as it has been broken into by the lands actually covered by the structures of the defendant, described in the complaint. The litigation related solely to the land so occupied, and could not result in restricting, or in any wise determining, the rights of the plaintiff to any other land covered by its right of way of 100 feet on each side of the track." What this must have meant is that the railroad company's right to the land on which the buildings stood and that alongside and opposite them was concluded by the estoppel found by the verdict of the jury and that the right of way beyond them, extending in all directions from them, was unaffected. However, we do not have to construe the judgment in that case because the circumstances of it were quite different from this in view of the boundary fence and hedge present here, and also because of the former ownership in fee and the situation of the property here concerned. Indeed, there is little in common in the cases except the broad principle of estoppel to claim land; they vary in more features than they are alike.

Affirmed in part, reversed in part and remanded.

FISHBURNE, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., not participating.