22802

In the Matter of Larry Laverne HANNA, Respondent.

(362 S. E. (2d) 632)

Supreme Court

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. B. J. Willoughby,* and *Deputy Atty. Gen. William K. Moore,* Columbia, *for complainant.*

*A. Camden Lewis,* Columbia, *for respondent.*

Heard Oct. 19, 1987.

Decided Nov. 23, 1987.

*Per Curiam:*

In this attorney grievance, Respondent is charged with acts of misconduct arising out of his representation of Wilbert Grissett. The Hearing Panel and Executive Committee found Respondent had engaged in attorney misconduct; both recommended a public reprimand. We agree with these findings and, as amended, with the recommended sanction.

In November 1981, Respondent was retained to represent Wilbert Grissett for injuries received when, as a pedestrian, he was struck by an automobile. Grissett signed an undated "Employment Agreement and Power of Attorney" giving Respondent "full power to sign my name and execute any and all releases and other documents and to accept compromised settlement." Although the agreement did not mention a fee arrangement, it is undisputed that the parties agreed upon a 40% contingency fee. Respondent claims further, however, that in the event of Grissett's non-cooperation, the fee would be determined on an hourly basis.

Thereafter, Respondent commenced an action on Grissett's behalf against the driver of the automobile. He later filed a claim for Grissett's personal injury protection (PIP) benefits. Prior to the completion of the PIP forms, the insurance carrier informed Respondent, by letter dated

March 15, 1982, that "[u]pon receipt of the completed PIP application and further specials, a draft will be issued promptly" for the PIP coverage.

On June 4, 1982, Respondent received a sight draft for $4,588.77 in PIP benefits, payable to Respondent and Grissett. After signing Grissett's name, he deposited the draft in his trust account. He disbursed $1,835.51 (40% of the PIP proceeds) to himself for his contingency fee, leaving a balance of $2,753.26 in the trust account. No funds were disbursed to Grissett.

During the summer of 1982, Grissett apparently decided not to proceed with the lawsuit. After he failed to appear for depositions, the suit was dismissed on November 11, 1982, for failure to prosecute.

On July 29, 1982, Respondent sent Grissett a bill in the amount of $5,024 for services based on an hourly rate. As no time sheets were kept, Respondent had estimated the fee due. The bill did not reflect a credit for the $1,835.51 earlier received as a contingency fee. Respondent later applied the remaining PIP proceeds towards the attorney fee, disbursing these funds to himself on October 26, 1982.

Three years later, Grissett contacted Respondent concerning the PIP benefits. After receiving an unsatisfactory response, Grissett retained an attorney, William Josephs.

When Respondent did not return Josephs' telephone calls, Grissett filed a complaint against him with the Board of Grievances and Discipline. Respondent then contacted Josephs and began a negotiation of the dispute.

From the subsequent correspondence between the attorneys, it is apparent that Josephs was led to believe that the total amount of PIP benefits collected was $2,753.26, the amount of PIP benefits reduced by the original 40% contingent fee. Joseph's letter accepting the settlement states "Mr. Grissett is willing to pay 40% of the $2,753.26 you collected apparently under no-fault."

After the settlement was reached, Respondent forwarded Josephs a check for $1,448.46 along with a general release purporting to release Respondent from liability for the "Bar grievance and the handling of a personal injury claim." A cover letter instructed Josephs to hold the check in trust "until such time as Mr. Grissett signs the enclosed Release

and instructs the Commission that this grievance is to be dismissed."

Grissett signed the release and a letter, prepared by Josephs, asking that the grievance be withdrawn. Out of the proceeds received from Respondent, Grissett paid Josephs an attorney's fee of $362.11.

Respondent was found guilty by the Executive Committee of violations of (1) DR 2-106, which prohibits the charging of an illegal or "clearly excessive fee"; (2) DR 9-102(B)(4), which requires attorneys to "promptly pay or deliver to the client ... funds ... in the possession of the lawyer which the client is entitled to receive"; and (3) DR 6-102, which provides that "[a] lawyer shall not attempt to exonerate himself from or limit his liability to this client for his personal malpractice."

■ PIP benefits are first party, no-fault coverage and are, generally, paid without the necessity of litigation.

An attorney representing a client in a personal injury or wrongful death action on a contingency fee basis should not make a charge for collecting PIP, except where the client's entitlement to those benefits is disputed or denied. Hereafter, Bench and Bar shall be guided accordingly, whatever may have been the practice heretofore.

The Executive Committee found the 40% contingency fee charged against the PIP benefits was excessive. We hold that, under the circumstances here, no fee was justified. Nothing was required by the carrier for prompt payment of the PIP except that the applications be completed. ·

■ After charging the unwarranted 40% fee, Respondent failed to simultaneously deliver the remaining 60% ($2,753.26) to Grissett. His later conversion of the 40% contingency fee contract into one based upon hourly services resulted in a bill to Grissett for $5,024. This conversion was arbitrary in that no notice was given Grissett, nor were records maintained to support the alleged hours of work.

Disbursement by Respondent to himself of the remaining $2,753.26 on October 26, 1982, was a flagrant act of misconduct. Through the efforts of Josephs, Respondent finally agreed to settle the fee dispute for 40% of the $2,753.26. He withheld $203.50 for ·costs and forwarded a check for

$1448.46. From this sum Josephs was paid $362.11, leaving a balance to Grissett of $1,086.35.

By his egregious misconduct Respondent has brought about these incongruous results; (1) from a PIP benefit of $4,588.77, paid voluntarily by the carrier, Respondent received $3,140.31 while Grissett received $1,448.46; (2) from his $1,448.46 Grissett netted $1,086.35 after paying $362.11 to an attorney he was compelled to employ in an adversarial proceeding against Respondent.

Respondent's misconduct was exacerbated by his attempt to be relieved of the attorney grievance filed by Grissett. Contrary to his claim that the release was limited to settlement of the fee dispute, it is clear that he conditioned the settlement of the fee dispute upon Grissett's withdrawal of his attorney grievance.

Numerous exceptions are raised by Respondent to the Report of the Executive Committee. After a careful review of the record, we find they are without merit.

We adopt the public reprimand sanction recommended by both the Panel and the Committee. We condition the sanction, however, upon repayment to Grissett by Respondent, within 30 days, of $3,502.42. This sum represents the $3,140.31 in PIP benefits wrongfully appropriated by Respondent and the $362.11 attorney's fee paid by Grissett to Josephs.

Accordingly, Respondent is publicly reprimanded. Within 30 days of receipt of this Order, Respondent shall submit to the Clerk of Court a receipt for this payment.

Public reprimand.

NESS, Chief Justice (dissenting):

I agree with the facts stated, but disagree with the sanction.

I would suspend the respondent for a period of six (6) months and require restitution.