1994

Gordon S. BRAY, Jr., Respondent v. Glenn R. HEAD, Appellant.

(429 S.E. (2d) 842)

Court of Appeals

*R. Patrick Snoddy*, Charlotte, N.C., *for appellant.*

*N. Heyward Clarkson, III, Jennifer E. Johnsen* of *Gibbes & Clarkson*, Greenville, *for respondent.*

Heard March 23, 1993.

Decided April 29, 1993

SHAW, Judge:

Respondent, Gordon S. Bray, Jr., commenced this action against appellant, Glenn R. Head, seeking dissolution of the parties' partnership along with a division of the assets, and

sought damages for fraud in the inducement and breach of contract. From an order of the master-in-equity determining capital contributions and assets and dividing the same, Head appeals. We affirm.

## PROCEEDINGS

Bray brought this action against Head seeking dissolution of his partnership with Head and division of the assets. He further alleged causes of action for fraud in the inducement and breach of contract, seeking damages. Head answered and counterclaimed for damages alleging Bray was guilty of slander *per se* and tortious interference with Head's business. He further prayed "[f]or an order of the court directing that the real estate partnership B & H Properties be dissolved and the assets equitably divided from the disposition of said partnership property." Head also moved for dismissal of Bray's complaint "for failure to state a claim upon which relief can be granted."

The Circuit Court found Bray's first cause of action seeking dissolution of the partnership and division of the assets was proper and denied Head's motion to dismiss. He concluded Bray's cause of action for fraud in the inducement and Head's causes of action of defamation and tortious interference with business should be dismissed, noting the parties had so agreed. He found Bray's cause of action for breach of contract should remain on the jury calendar for trial and granted Bray's motion to refer his first cause of action to the master-in-equity for final judgment with direct appeal to the Supreme Court.

The master entered his order dated December 10, 1991 determining the capital contributions made by the parties and ordering the sale of the partnership assets and the distribution of the proceeds, including the requirement that Bray receive $30,976 from the proceeds before the remainder is split in order to make up the difference in the amounts of capital the parties had contributed.

## FACTS

B & H Properties was a partnership between Bray and Head created to acquire real estate, construct a dental office building and acquire dental equipment. The partnership ac-

quired land, constructed a dental office and acquired certain equipment and furnishings used in the common areas of the building. The parties agreed that each would own ½ of the assets and be responsible for ½ of the liabilities. For approximately the first 18 months, the building was occupied solely by Bray while Head was still in dental school. During this time, Bray made monetary contributions to meet the partnership's obligations. After completing his studies, Head also occupied the building and, beginning October 1990, began making higher payments to the partnership in order to catch up on his contributions. At some point, a dispute arose between the parties making the partnership untenable.

### TESTIMONY OF BRAY

The parties entered into a 50/50 partnership with both to contribute equal amounts to B & H. They obtained a line of credit of approximately $490,000 from SCN but ran short and Bray obtained a $35,000 loan. Bray borrowed the money on behalf of the partnership and considered it a partnership debt. During the first 18 months, Bray alone made interest payments to the bank but considered Head equally obligated. Bray made these payments while he solely occupied the building and it was agreed between the two that he would receive credit for these payments as a capital contribution. Following a meeting with Bray's tax attorney, the parties agreed the payments made by Bray could be characterized as rent for tax purposes, but they were still to be treated as capital contributions. Sometime after Head began practicing in the building, Head began paying $3,600 and Bray only $1,600 of a total $5,200 monthly obligation so Head could get a tax advantage and catch up on his capital contribution account. Bray stated he may have signed a lease agreement to rent 4,000 of the 5,000 square foot building from B & H Properties for $4,600 a month. He asserted the payments were considered rent for tax purposes only and the most space he could claim he used while sole occupant of the building was 4,000 square feet.[1]

---

[1] No lease agreement is contained in the record. There is no indication Head sought to introduce any such agreement. Apparently, the partnership never executed any written lease agreement.

## TESTIMONY OF LINDA TINDLE

Ms. Tindle, the office manager for both Bray and Head testified she recorded "every penny" B & H received and always wrote out an explanation of where the money came from. She stated there were cost overruns of approximately $70,000 on the building and that Head made a $39,000 cash contribution to the partnership, $35,000 of which went toward the overruns. She further stated that Bray took out a $35,000 loan on behalf of the partnership to pay for the remaining overruns. Each time a payment was made on the $35,000 loan, the payment was treated as a capital contribution but the $35,000 loan itself was not treated as a capital contribution by Bray.

Ms. Tindle further testified that Plaintiff's Exhibits 3 and 4 indicated individual contributions by each party and that Plaintiff's Exhibits 5 and 6 indicated the actual amount each party put in, including amounts they contributed on an equal basis that did not show up on Plaintiff's Exhibits 3 and 4. She stated that, as of October 1991, Bray had contributed a total of $213,031.01 and Head had contributed a total of $182,055.61 to the partnership.

## TESTIMONY OF JANE DALLAS

Ms. Dallas, Head's bookkeeper, testified she was present at a meeting with Bray's tax attorney to discuss the partnership situation when something came up about classifying some of Bray's payments as rent so Bray could get a better tax advantage. She stated that around November, 1990, Head began paying more per month to the partnership than Bray was paying and that she recorded these payments as rent.

## TESTIMONY OF WILLIAM KIRBY

Mr. Kirby prepared the partnership tax returns. He testified that he attended a meeting with Bray, Bray's tax attorney and Head at which time Head indicated he wanted Bray to get "the best tax advantage" he could so they worked out an arrangement and amended the partnership tax return to reflect the amount of rent agreed upon at that meeting. The interest on the partnership's mortgage was deducted on the partnership tax return with any resulting benefit flowing to both Bray and Head. He further stated both parties had made capital contributions that were classified as rent and it was

"not a situation where one [was] paying rent and claiming a capital contribution and the other [was] not."

## TESTIMONY OF JAY EPTON

Mr. Epton is a certified public accountant who prepared Head's 1989 and 1990 individual tax returns. He stated Head's 1990 tax return Schedule C reflected a deduction of $34,884.96 for rent payments. He further stated that such payments either are rent or capital investment, but could not be treated as both.

## TESTIMONY OF HEAD

Head stated he put money into B & H Properties and owns ½ of the building and ½ of certain equipment. He stated he attended the meeting with Bray's tax attorney in 1989. Head told Bray, because he was in school and didn't have any income, Bray could take the tax advantage with respect to the building. Bray paid the majority of the operating expenses of the partnership while he was sole occupant of the building.

Bray called Head at school and said he needed to pay rent to get a tax deduction. Head did not understand these moneys would be credited as contributions to capital accounts. Head did know that if there was a tax advantage, Bray got it "as long as it wasn't unfair to" Head.

In the last year, Head began paying more money as rent than Bray. Jane Dallas was the one responsible for keeping the records of Head's practice. Head never reviewed his tax returns so he wasn't aware he had taken full tax advantage of the rent he paid but he would not disagree that he had. He does not expect rent payments to be counted as capital investment.

## TESTIMONY OF DOUGLAS SCHMIEDING

Mr. Schmieding is a certified public accountant. Mr Schmieding prepared a report which includes an analysis of B & H Properties' capital account. He prepared this report because, in his opinion, "the capital accounts, according to the tax return[s] were not proper."

He testified he made adjustments considering, among other things, the amount of rent deductions reflected on the tax returns of the individual partner. His final analysis reflected Bray's total capital contribution as $59,844 and Head's total

capital contribution as $96,217. He stated rental expense cannot be treated as a capital contribution. If the payments made by Bray were not rent, then the tax returns were incorrect.

## ISSUES

■ Head first contends the trial judge erred in failing to dismiss Bray's action. He asserts, under *Burch v. Ashburn*, infra, a partner may not sue another partner at law for matters arising out of the partnership until there has been an accounting in equity and, because Bray made no demand for an accounting in his complaint, the action should have been dismissed.

*Burch v. Ashburn*, 295 S.C. 274, 368 S.C. (2d) 82 (Ct. App. 1988) noted the rule that copartners cannot sue each other at law for matters arising out of the partnership until there is first an accounting in equity between the partners, even if there has been a dissolution of the partnership. This is not the situation in the case at hand. While Bray initially sought dissolution of the partnership and division of its assets along with damages for breach of contract and fraud in the inducement, the only cause of action tried before the master was for dissolution of the partnership and division of the assets. In his order the master found that Bray sought "to have a general partnership at will dissolved and the assets and liabilities distributed to the partners" and that Head "in his pleadings [sought] the same relief." The record before us supports this finding. Head now seeks to dismiss the master's findings because the outcome was not favorable. Further, there is no indication in the record that Head raised this argument either before the circuit judge, in his motion to dismiss, or before the master.

■ Head next contends the master erred in crediting rent payments made by Bray as capital contributions to the partnership and in arbitrarily disregarding the testimony of two expert witnesses that it was improper to classify the same as both rental payments and capital contributions.

The evidence of record shows, and the master found, that the parties agreed the payments made by Bray while he solely occupied the building would be considered capital contributions to Bray's partnership account and, further, that Bray was allowed to deduct a portion of his capital contribution as rent from his tax returns. He found this "characteriza-

tion" as tax payments did not affect the agreement between the parties and beginning October, 1990, Head began paying into the partnership $2,000 more per month to make up the difference between his capital account and Bray's. Contrary to Head's assertion, the record shows, by the testimony of Mr. Kirby, that both Bray and Head made capital contributions that were classified as rent and it was "not a situation where one [was] paying rent and claiming a capital contribution and the other [was] not."

As to Head's argument regarding the expert testimony, the record does, indeed, indicate these witnesses found it was improper to classify the payments as both rent for tax purposes and as a capital investment to the partnership.[2] However, as noted by the master, whether or not the parties attempted to characterize these payments as rent for tax purposes does not affect the agreement between the partners. We find the record shows the parties agreed to treat the payments as capital contributions, that Bray proposed, and Head acquiesced, that Bray should be allowed to get "the best tax advantage" while Bray solely occupied the building, and that Head, likewise, later took advantage of this tax deduction by classifying what the agreement considered capital contributions as rent for tax purposes only. Whether or not it was proper for the parties to classify these capital contributions as rent for tax purposes is more properly a question to be considered by the I.R.S. and State Tax Commission. Regardless of whose suggestion it was to treat the payments in this manner, the parties clearly intended the payments as capital contributions.

Head also asserts Bray failed to offer an analysis of the partnership accounts and offered no expert testimony on this issue and, therefore, the only account analysis presented to the court was that of his expert, Mr. Schmieding. He thus contends the master erred in failing to accept Mr. Schmieding's analysis.

First, it must be noted that Bray did in fact offer an analysis of the partnership accounts. Ms. Tindle specifically stated she kept records of the money received from both Bray and

---

[2] The two "experts" referred to by Head are Mr. Epton and Mr. Schmieding. The record gives no indication that either of these witnesses were offered or accepted as experts.

Head and that Plaintiff's Exhibits 5 and 6 showed the actual amounts both parties put into the partnership. She stated that as of October, 1991, Bray had put a total of $213,031.01 into the partnership and Head had put in $182,055.61, the exact same figures as used by the master.

Head cites no law that requires Bray to offer expert testimony on the subject. Bray offered evidence of the amounts the parties actually paid to or on behalf of the partnership. It does not appear that expert testimony is necessary to make a determination on this matter. Further, Mr. Schmieding's analysis was based on the incorrect assumption that the payments in issue were not capital contributions. Also, Mr. Schmieding made certain adjustments under his analysis for the $35,000 loan which he considered a liability of Bray's and not the partnership whereas there is evidence that Bray borrowed this money on behalf of the partnership and not as a personal loan. Mr. Schmieding admitted that the fact it was a partnership loan would change his numbers in a couple of ways, but he did not give the final results of such a change. Finally, as previously noted, the record fails to indicate Mr. Schmieding was offered as an expert.

Head further asserts the master erred in failing to address the issue of whether the $35,000 loan was a personal loan to Bray, and thus a capital contribution by him, or a liability of the partnership.

It appears from the record that this $35,000 loan was taken out with SCN. It is also clear that Bray made payments on this loan from his personal account but considered such payments as capital contributions. There is some indication the loan was completely paid off by Bray. Under cross-examination, the following exchange took place:

Q. So it's your position then that the loan was a partnership debt?

A. That is—

Q. That thirty-five thousand dollars ($35,000)?

A. It is.

Q. Can you explain then why you made payments on it from your personal checking account?

A. No, other than just paying into—getting credit into B & H for it.

Q. Did you not pay this loan off early from personal funds?

A. I don't know. I may have.

We find the record shows the loan was taken out by Bray on behalf of the partnership and when Bray made payments on the loan from his personal account, he was making a capital contribution.

For the foregoing reasons, the order below is affirmed.

Affirmed.

GARDNER and BELL, JJ., concur.

