490 S.E.2d 265

**In the Matter of C. LaVaun FOX, Respondent.**

No. 24687.

Supreme Court of South Carolina.

Heard July 9, 1997.

Decided Sept. 2, 1997.

294

Daniel W. Williams, of Bedingfield & Williams, Barnwell, for respondent.

Charles Molony Condon, Attorney General, and Charles H. Richardson, Senior Assistant Attorney General, Columbia, for complainant.

PER CURIAM:

In this attorney discipline matter, Respondent is charged with professional misconduct arising out of the collection of attorneys' fees from a multiple-party settlement. We find Respondent's actions constitute misconduct warranting a public reprimand.

## FACTS/PROCEDURAL POSTURE

On February 16, 1987, John Sept ("Deceased") was killed in a car wreck. Attorney Jerry Screen was hired March 11, 1987, by Cassaundra Green to pursue a wrongful death action, claiming her minor son LaShon Green ("Minor") was Deceased's natural child. Screen associated Respondent to assist him with the case. A petition was filed May 19, 1987, asserting Deceased was the natural father of Minor and requesting Minor be listed as a statutory heir in Deceased's estate.[1] All parties subsequently entered into an agreement providing Minor and Leila S. Minus ("Minus"), Deceased's mother, would share equally as beneficiaries in a wrongful death action being pursued by Administrator.[2] Screen and Respondent would "be chief counsel for the purpose of pursueing [sic] the wrongful death claim."[3] The Barnwell County Probate Court approved this agreement in a written order July 10, 1987.

---

1. Deceased died intestate. He was represented by his brother, Albert Sept Minus ("Administrator"), the administrator of his estate.

2. Additionally, Minor would not be listed as a statutory heir in Deceased's estate.

3. Minus and Administrator had been represented by separate counsel.

A settlement of the wrongful death action was ultimately approved by the Barnwell County Probate Court October 8, 1987. The settlement provided for an immediate cash payment of $175,000 along with annuities.[4] Screen received this $175,000 payment in his capacity as chief legal counsel. From this lump-sum payment, in November 1987 he paid $152,132 [5] in attorneys' fees as follows: (1) $51,000 to Respondent; (2) $36,877 to the attorney acting as separate counsel for Minus and Administrator, see supra note 3; (3) $5,000 to another attorney peripherally involved in the case; and (4) $59,255 to himself.

On April 3, 1991, Cassaundra Green and Minor filed a petition in Bamberg County seeking an accounting of how Screen distributed the $175,000 lump-sum payment because Minor had never received any portion of it. What followed was a confusing mass of legal actions and hearings, the substance of which is irrelevant to this disciplinary proceeding. Ultimately, all actions were consolidated into one for declaratory judgment in which the parties sought to have their rights and liabilities determined regarding the appropriate attorneys' fees arising from the wrongful death settlement. This declaratory judgment action was submitted to arbitration. After the

---

**4.** The terms of the annuities are set forth below:

1. Immediate cash: $175,000.00
   *Leila E. Minus—D.O.B.: 4–18–28*

2. $600.00 per month, compounding annually at 3% for life with 10 years guaranteed, beginning 10–15–1988.
   *Cassaundra Green*

3. $5,000.00 payable on 10–15–1990, guaranteed.
   *LaShon Green*

4. $200.00 per month, level, for 12 years certain only, beginning 10–15–87.
5. $5,000.00 payable on 10–15–1990, guaranteed.
6. $5,000.00 payable on 9–15–1999, guaranteed.
7. $7,500.00 payable on 9–15–2000, guaranteed.
8. $7,500.00 payable on 9–15–2001, guaranteed.
9. $10,000.00 payable on 9–15–2002, guaranteed.
10. $10,000.00 payable on 10–15–2005, guaranteed.
11. $15,000.00 payable on 10–15–2010, guaranteed.
12. $20,000.00 payable on 10–15–2015, guaranteed.

**5.** The panel report states this total is $151,877.

arbitration hearing but before the arbitrator's order, a final settlement was reached in August 1994 whereby Screen and Respondent acknowledged error in the calculation of attorneys' fees and agreed to pay Minor $35,000.

The complaint charged Respondent with collecting an excessive fee and engaging in conduct prejudicial to and tending to pollute the administration of justice. *See* DR 1–1–102(A)(5); DR 2–106; ¶ 5(D), Rule 413, SCACR.[6] Both the hearing panel and the Interim Review Committee [7] ("IRC") found the allegations contained in the complaint constituted misconduct. Both recommended Respondent receive a public reprimand.

## DISCUSSION

■ Under former DR 2–106(A), a lawyer could not enter into an agreement for, charge, or collect an illegal or "clearly excessive fee." "A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." *Id.* at 2–106(B).

Two documents are in the record which shed some light on the fee arrangements in this case. The first is between Cassaundra Green and Screen dated March 11, 1987. It provides Screen would be entitled to one-third of any recovery made.[8] The second is a letter written July 2, 1987 from Screen to the attorney serving as separate counsel for Minus

---

6. Because the alleged misconduct occurred in 1987, the former Code of Professional Responsibility applies.

7. The order adopting the new Rules for Lawyer Disciplinary Enforcement provided that any disciplinary case in which a hearing had been held by a hearing panel prior to January 1, 1997, would continue to conclusion under the former Rule on Disciplinary Procedure. The Interim Review Committee was created to fulfill the functions performed by the Executive Committee under Paragraph 14(a) of the former Rule on Disciplinary Procedure in those cases. Citations in this opinion to Rule 413, SCACR, will be to the former Rule on Disciplinary Procedure.

8. Apparently, this agreement was entered into by Ms. Green on Minor's behalf, although the document never mentions Minor. Ms. Green was not appointed as Minor's GAL until October 8, 1987, the date the wrongful death settlement was approved and seven months after she hired Screen.

and Administrator (*see supra* note 3). This letter was written before any consent orders or settlements were approved. It provides, *inter alia:*

> This will confirm our agreement of June 30, 1987, in which we agreed to proceed in the following manner:
>
> (a) That one-third (⅓) attorneys' fees for LaVaun Fox and myself on behalf of LaShawn Cartey Green will be taken off the top of the total settlement;
>
> (b) That we would agree to pay you the sum of $8,000.00 for your services and costs incurred up to and including June 30, 1987;
>
> (c) That hereafter LaVaun Fox and I would take over management of this case by serving as lead counsel.

Screen and Respondent testified when Respondent was associated to assist with the case, they agreed the two of them would equally split the one-third contingency fee.[9]

The problem in this case centers around the manner in which Screen and Respondent valued the wrongful death settlement (more specifically, the annuities made part of the settlement), and how they collected their fee out of it. When they were calculating the settlement, they did not discount the annuities to present value. Instead, they added up the guaranteed payments as they would be paid in the future. *See supra* note 4 (detailing the annuity payments). Therefore, they valued the entire settlement at $371,340. From this, they calculated their attorneys' fee at $123,255.[10]

---

**9.** While it is unclear the extent to which Screen's client(s) were made aware of and understood Respondent's involvement, Respondent has not been charged with any misconduct arising from this. *See* DR 2–107(A) (lawyer shall not divide fee for legal services with another lawyer not in his law firm unless the client consents after full disclosure; division is made in proportion to services performed and responsibility is assumed by each; and total fee not clearly excessive).

**10.** On top of this, an additional $28,877 was paid to the attorney serving as separate counsel for Minus and Administrator (*see supra* note 3), which is why the total attorneys' fee paid was $152,132. There is some confusion in the record regarding this attorney's continued involvement after Screen and Respondent were appointed lead counsel July 10, 1987. The letter Screen wrote, quoted above, seems to indicate separate counsel would no longer be involved. However, Respondent claimed this attorney continued to represent Minus and Administrator, which would apparently account for this additional payment.

It is now well-settled that in valuing structured settlements like the one here, the cost method should be used. *See Tubbs v. Bowie,* 308 S.C. 155, 417 S.E.2d 550 (1992). The premium paid to purchase the annuity contracts here was $110,818. When added to the initial $175,000 cash payment, the settlement would be valued at $285,818. Thus, using this figure, a one-third contingency fee would be approximately $95,000. If the settlement's value had been appropriately discounted, it is obvious the fees paid here were excessive (approximately fifty-three percent of settlement's value).[11]

Indeed, Respondent has not argued otherwise. He instead argues he should not be disciplined for collection of the excessive fee because (1) in 1987 the law was not settled in South Carolina regarding how to correctly value a structured settlement, and (2) he did not actually calculate or disburse the money but relied on Screen to do it. We find neither argument absolves Respondent from responsibility in this matter.

Respondent is correct that until *Tubbs* was decided in 1992, South Carolina had not directly addressed the issue of structured settlement valuation. 308 S.C. 155, 417 S.E.2d 550. *Tubbs* involved a claim by one joint tortfeasor that a jury verdict rendered against her should be offset by the amount paid by another tortfeasor, that amount being paid partly in annuities. The issue then became how to value the annuities for the purpose of determining the amount of offset. We held the present value of the annuities as determined by their actual cost was the appropriate method of valuation. In doing so, we noted in *dicta* this was the method "widely used in determining the amount of contingent attorney fees in structured settlements involving annuities." 308 S.C. at 159, 417 S.E.2d at 553.

The problem in this case is not so much the valuation of the structured settlement in itself but the combination of the

---

**11.** We have already disciplined Screen for his involvement in this case. *See In the Matter of Screen,* 318 S.C. 367, 458 S.E.2d 39 (1995). In *Screen,* we found Screen "erroneously calculated the value of the structured settlement and the attorney's fees due him." *Id.* at 368, 458 S.E.2d at 40. We concluded, *inter alia,* Screen "negligently calculated and collected an excessive fee." *Id.* at 369, 458 S.E.2d at 40. Screen was publicly reprimanded for this misconduct.

valuation and the manner in which the fee was subsequently collected. Valuing the settlement based on guaranteed future payments or total cash payout would most likely not have presented an ethical problem had the fee not then been taken up-front (i.e. out of present-day dollars). A basic understanding of the value of money over time would indicate this method, of taking the fee from present-day dollars but not valuing the annuity at present-day dollars, would result in a windfall for the attorneys.[12]

In *Schneider v. Kaiser Foundation Hospitals*,[13] the California Court of Appeals construed a statute mandating that in cases where plaintiffs are awarded periodic payments, courts must determine the "total value" of the payments and use this figure in awarding contingency attorneys' fees. The issue was whether "total value" meant the "arithmetic sum of all payments required by the award, i.e. the award's face value or the present value of the stream of future payments." *Id.* 264

---

12. *See generally* Jay M. Zitter, Annotation, *Propriety and Effect of "Structured Settlements" Whereby Damages are Paid in Installments Over a Period of Time, and Attorneys' Fees Arrangements in Relation Thereto*, 31 A.L.R.4th 95 (1984) (discussing various methods for valuing structured settlements and collecting attorneys' fees, including (1) calculating fee from discounted value and making immediate award, (2) calculating fee from discounted value and paying fee as settlement payments come to client, or (3) calculating fee from settlement not discounted but paying fee as settlements come to client). We have found no case where an immediate attorneys' fee (i.e. based on present-day dollars) was approved and the settlement's value was not also discounted.

This opinion should not be read as addressing the issue of which method of collecting an attorneys' fee based on a structured settlement is always the better practice, i.e. whether the fee should always be taken initially or should be taken as the client actually receives his or her future payments. We do not view *Tubbs* as dispositive. Attorneys' fees was not the actual issue in *Tubbs* and thus it is not directly on point. At best, *Tubbs* stands for the proposition that *when* a fee will be taken initially, it must be based on the annuity's cost. We reaffirm this premise but emphasize the narrow issue presently at hand, that being whether, under the facts of this case, the attorneys collected an excessive fee by taking their portion of the fee based on the annuities out of the initial cash payment without discounting the annuities to present value.

13. 215 Cal.App.3d 1311, 264 Cal.Rptr. 227 (1989), *overruled on other grounds by Moncharsh v. Heily & Blase*, 3 Cal.4th 1, 10 Cal.Rptr.2d 183, 832 P.2d 899 (1992).

Cal.Rptr. at 228.  The Court held the present value of the payments was the appropriate method.  In doing so, it noted California had not yet addressed this issue, hypothesizing that "the absence of appellate authority may only reflect that in the marketplace the answer is well-known to experienced practitioners and courts, with virtual unanimity among them that the manner of calculating attorney's fees . . . is to determine the present value of the stream of future payments." *Id.* at 230.  It also found the best determination of present value to be the cost of the annuity purchased.  "Any other method of calculation . . . would produce attorney's fees probably considered excessive." *Id.* at 231 (quoting Meyer, Settling in Your Client's Interest, Cal. Lawyer, July 1988, at 55).  We find with or without the benefit of *Tubbs*, Respondent and Screen should have known the fees taken were excessive.[14]

Regarding Respondent's second argument, the Attorney General correctly points out he and Screen were joint venturers in their representation.  "Where an attorney retained on a contingent fee to prosecute a claim engages another lawyer to assist in the litigation, upon an agreement to share the fee in case of success, otherwise to receive nothing, they become joint venturers." 46 Am.Jur.2d *Joint Ventures* § 54 (1994).  Furthermore, "[r]elations among joint venturers are governed by partnership law." *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 238, 391 S.E.2d 538, 543 (1989).  From this, the Attorney General seeks to establish that any misconduct on Screen's part automatically renders his "partner," Respondent, guilty of misconduct based on principles of joint and several liability.  We disagree with this proposition.  As a general rule, a lawyer is not subject to discipline because of a partner's misconduct.  7 Am.Jur.2d *Attorneys at Law* § 84 (1980).  *But see In Re Falanga*, 180 A.D.2d 83, 583 N.Y.S.2d 472 (1992) (attorney who failed to oversee or review partner's records and bookkeeping practices sanctioned for partner's conversion of client funds;  even though attorney did not know of partner's actions, his neglect was a contributing factor).  However, the lawyer will be subject to discipline if the misconduct occurred with the

---

14.  We are only finding the fee excessive regarding that portion based on the annuities.

lawyer's "knowledge, consent, or participation." 7 Am.Jur.2d *Attorneys at Law* § 84. We find Respondent is not being held vicariously responsible under the facts of this case.

Respondent did not actually write the checks paying the attorneys' fees. Nonetheless, both Screen and Respondent testified Respondent was included in the settlement discussions, was aware of how the settlement was being calculated for the purpose of attorneys' fees, knew the fees were being paid from the up-front money, and agreed with it. Screen testified Respondent knew what the annuity would cost at the time of settlement. While he testified he did not know the exact figures involved, Respondent admitted he could easily have ascertained them "had I sat down with a pencil and paper and divided." [15] As explained above, the cause of the excessive fee was the incorrect valuation of the settlement combined with the decision to take the fees from the up-front payment, both actions of which Respondent was aware and approved.

Respondent was, by a court order, named co-lead counsel to represent the parties in this action.[16] Although he did not take the time to insure his clients received the correct portion of their settlement, he contentedly accepted a generous fee for himself. That Respondent may not have intended to deceive or defraud does not change the fact professional misconduct occurred. When disciplining Screen, this Court specifically found Screen's actions were *negligent* as opposed to intentional. *Screen*, 318 S.C. at 369, 458 S.E.2d at 40. There was no finding of fraud or deceit, yet the Court still found professional misconduct. *See also In re Lempesis*, 293 S.C. 510, 362 S.E.2d 10 (1987) (misconduct in charging excessive fee although no finding made lawyer acted with intent to defraud or deceive).

---

**15.** The only payments Respondent stated he was not aware of were the $28,800 additional fee paid to the original counsel for Minus and Administrator and the $5,000 fee paid to another attorney. Even without these payments, however, the fees would have still been excessive (approximately 40% of settlement's value).

**16.** Respondent argues he was only associated to help with the initial paternity aspects of the case. The court order belies this argument, as does Screen's testimony that he brought Respondent in for additional experience with all aspects of the case.

■ Finally, we find the sanction imposed consistent with sanctions given in similar cases. *See Screen,* 318 S.C. at 367, 458 S.E.2d at 39; *In the Matter of Hanna,* 294 S.C. 56, 362 S.E.2d 632 (1987); *In the Matter of Burgess,* 275 S.C. 315, 270 S.E.2d 436 (1980). Respondent hereby stands publicly reprimanded for his conduct.

PUBLIC REPRIMAND.