THIS OPINION HAS 
 NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN 
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Mid-South Management Company Incorporated and William C. Buchheit Trust 
 A, as partners of Spartanburg Beach Cove Associates, a general partnership 
 and a joint venturer of Beach Cove Associates Joint Venture, and Beach 
 Cove Associates Joint Venture, Respondents,
v.
Sherwood Development Corporation, a joint venturer of Beach Cove Associates 
 Joint Venture; Coastal Financial Corporation, Coastal Federal Savings 
 Bank; Coastal Mortgage Bankers and Realty Co., Inc.; John Doe, which represent 
 unidentified shareholders of Sherwood Development Corporation; Michael 
 C. Gerald and James T. Clemmons, Defendants,
of whom, Sherwood Development Corporation, a joint venturer of Beach 
 Cove Associates Joint Venture; Coastal Financial Corporation, Coastal 
 Federal Savings Bank; Coastal Mortgage Bankers and Realty Co., Inc., Michael 
 C. Gerald and James T. Clemmons, Appellants.
 
 
 

Appeal From Horry County
J. Stanton Cross, Jr., Circuit Court 
 Judge

Unpublished Opinion No.  2004-UP-611
Submitted November 1, 2004  Filed December 
 7, 2004

AFFIRMED

 
 
 
Robert E. Stepp and Amy L.B. Hill, both of Columbia, for Appellants.
Michael B.T. Wilkes, of Spartanburg, and Michael W. Battle, 
 of Conway, for Respondents.
 
 
 

PER CURIAM:  Spartanburg Beach Cove Associates (Spartanburg) and Sherwood 
 Development Corporation (Sherwood) dispute their monetary contributions to a 
 settlement of lawsuits brought against their joint venture, Beach Cove Associates 
 (the joint venture).  Sherwood and its affiliates (Appellants), appeal an 
 order finding Spartanburg and its affiliates (Respondents), are entitled to 
 a judgment in the amount of $278,333.33, plus interest.  We affirm. [1] 
FACTS
Beach Cove Development Corporation (BCD), Spartanburg, and 
 Sherwood created the joint venture in 1983 to develop land and sell condominiums 
 in Horry County.  Originally, Spartanburg had a 50% interest in the joint venture, 
 and Sherwood and BCD each had a 25% interest.  BCD defaulted as a joint venturer 
 sometime in the mid 1980s, before the litigation began, leaving Spartanburg 
 with a two-thirds interest, and Sherwood with a one-third interest.
Spartanburg, Sherwood, and BCD entered into a joint venture 
 agreement (Agreement) on August 23, 1983.  The Agreement described the project 
 to be undertaken and defined the role of the venturers.  BCD was granted limited 
 powers of management.  However, after BCD defaulted, Spartanburg became the 
 majority venturer, and thus gained control as the managing venturer. 
The management authority was subject to certain 
 limitations.  The Agreement provided that none of the venturers would have authority 
 to act for or assume any obligations or responsibility on behalf of any other 
 venturer or the joint venture.  Additionally, the Agreement restricted management 
 of the joint venture from making certain expenditures without prior authorization 
 and provided that venturers could not take actions binding the joint venture 
 without the consent of the other venturers.  
The Agreement specified initial contributions, and provisions 
 were made for additional capital contributions.  Sherwood agreed to use its 
 best efforts to obtain loans to provide financing as necessary, and BCD was 
 given authorization to require additional contributions from the venturers by 
 giving written notice.  The Agreement further provided that no venturer would 
 be required to make any capital contribution or loan to the joint venture other 
 than as provided in this Agreement or as mutually agreed upon by the parties.  
 The Agreement also provided for allocation of profits and losses:  The respective 
 share of each Venturer in all joint venture income and expenses and each item 
 thereof, including depreciation and any investment tax credits, shall be allocated 
 to the Venturers in accordance with their Percentage Interest.         
Finally, the Agreement contained indemnification 
 provisions.  The venturers agreed to hold each other harmless from losses resulting 
 from, among other things, lawsuits against the joint venture arising out of 
 breach of the Agreement.  Additionally, upon dissolution the parties agreed 
 to fund any negative balances. 
Pursuant to the Agreement, the condominiums were built, but 
 the project was largely unsuccessful.  The project encountered serious difficulties 
 because of federal tax changes, increased construction costs, and problems with 
 management.  Numerous capital calls were made and Sherwood paid all of them.  
 Additionally, in August 1993, Beach Cove Ocean Resort Homeowners Association, 
 Inc., sued the joint venture, alleging construction defects in the condominiums 
 and the parking garage.  The lawsuit also named numerous other defendants, including 
 the builders and suppliers of Beach Cove Ocean Resort.  Individual homeowners 
 in the condominium project also brought a class action lawsuit against the joint 
 venture.  
The joint venture retained the Bellamy Law Firm (Bellamy), 
 which advised the joint venture that a trial on the merits could result in a 
 significant judgment against it.  When mediation failed, Bellamy began working 
 on a settlement.  A conflict of interest existed in that Sherwood was set up 
 as a corporation with no assets, and was thus effectively judgment-proof, whereas 
 Spartanburg, a general partnership capable of responding to an adverse judgment, 
 was not.  Bellamy was aware of the possible conflict and discussed it with the 
 venturers.  Howell Bellamy, Jr., testified the venturers agreed that Bellamy 
 would continue to represent the joint venture and the venturers would deal with 
 their differences later.  Sherwood initially refused to contribute anything 
 toward a potential settlement, but did pay some of the legal fees.
In January 1997, Mike Gerald, president of Sherwood, and 
 Ray Harris, Spartanburgs corporate attorney, discussed the possibility that 
 the lawsuits could be settled if the joint venture authorized Bellamy to offer 
 up to $1 million in settlement.  As a result, Harris called Bellamy and confirmed 
 the joint venture would contribute up to $1 million to settle the lawsuits.  
 The minutes from the Sherwood Board of Directors meeting on January 16, 
 1997 show that Sherwood approved the authorization to fund the settlement, but 
 there was an erroneous assumption that the other defendants would contribute 
 approximately $650,000 towards the $1 million settlement, so the joint venture 
 would be responsible for only $300,000.  The Sherwood board then approved a 
 measure to commit $100,000, or one-third of the anticipated amount, toward the 
 settlement.  This offer was subject to approval by Spartanburg and receipt of 
 a full release of Sherwood.  However, Harris thought Sherwoods offer was unsatisfactory.  
 Thus, Spartanburg did not respond and subsequently rejected the offer. 
Spartanburg decided to authorize Bellamy to continue with 
 the settlement negotiations and deal with Sherwood at a later time.  Bellamy 
 continued to work on a settlement and in February 1997 all parties to the underlying 
 litigation entered into a global settlement in the amount of $5,450,000.  The 
 joint venture was responsible for $835,000 of the total settlement.  Spartanburg 
 then issued a capital call requiring Sherwood to contribute $278,333.33, or 
 one-third of the joint ventures portion.  However, Sherwood refused to pay.  
 Spartanburg paid the entire amount and sued Sherwood to collect its share of 
 the settlement.  The joint venture was dissolved as of December 31, 1998.  

The case was referred to a master-in-equity by a consent 
 order of the parties.  The claims against Appellants were bifurcated because 
 all the other Appellants stood in the shoes of Sherwood in regard to the claims 
 asserted in this case.  The claims against Sherwood were tried before the master, 
 and he issued a preliminary order finding Sherwood was liable for its share 
 of the settlement as alleged, plus pre-judgment interest in the amount of $158,302.11, 
 for a total of $436,635.44.  Sherwood made a motion for reconsideration.  In 
 August 2003, the master issued an order denying Sherwoods motion to the extent 
 it sought to reverse his findings of fact and conclusions of law, resolving 
 his findings on certain testimony in Spartanburgs favor, and adopting the preliminary 
 order as the final order and judgment against Sherwood.  Sherwood now appeals.
STANDARD OF REVIEW
In an action at law, referred to a master for final judgment, this 
 court will correct errors of law, but we must affirm the masters factual findings 
 unless there is no evidence that reasonably supports those findings. Jefferies 
 v. Phillips, 316 S.C. 523, 527, 451 S.E.2d 21, 22-23 (Ct. App. 1994).  The 
 complaint alleges four causes of action against Sherwood, three of which are 
 legal claims.  Of these, two involve breach of the joint venture Agreement, 
 and one is a claim for contribution pursuant to S.C. Code Ann. § 33-41-510 (Supp. 
 2003).  See Sterling Dev. Co. v. Collins, 309 S.C. 237, 240, 421 
 S.E.2d 402, 404 (1992) (action for breach of contract seeking money damages 
 is an action at law); Wallace v. Milliken & Co., 300 S.C. 553, 555, 
 389 S.E.2d 448, 449 (Ct. App. 1990), affd as modified, 305 S.C. 118, 
 406 S.E.2d 358 (1991) (actions created by statute are generally legal in nature).
The fourth issue, quantum meruit, is equitable in nature.  
 When both legal and equitable claims are in the same suit, each retains its 
 own identity and applicable standard of review.  Corley v. Ott, 326 S.C. 
 89, 92, 485 S.E.2d 97, 99 (1997).  In equity cases, the appellate court may 
 find facts in accordance with its own view of the preponderance of the evidence.  
 Sloan v. Greenville County, 356 S.C. 531, 544, 590 S.E.2d 338, 345 (Ct. 
 App. 2003).
LAW/ANALYSIS
Sherwood argues 
 it is not required to pay its share of the settlement because it did not agree 
 to contribute to the settlement.  We disagree.  
Partnership law 
 governs relations among joint venturers.  Matter of Fox, 327 S.C. 293, 
 301, 490 S.E.2d 265, 270 (1997).  Practically the only difference between a 
 joint adventure and a partnership is that a partnership is ordinarily for 
 the transaction of a general business of a particular kind, while a joint adventure 
 relates to a single transaction.  Wellington v. Crosland, 129 S.C. 127, 
 141, 123 S.E. 776, 781 (1924).  Accordingly, joint venturers owe each other 
 the highest level of fiduciary duty, as in partnerships.  Kuznik v. Bees 
 Ferry Assoc., 342 S.C. 579, 597-98, 538 S.E.2d 15, 24-25 (Ct. App. 2000).  
 Also, section 33-41-510(1) of the South Carolina Code (Supp. 2003) provides 
 that each joint venturer must contribute toward the joint ventures losses according 
 to its share of the profits unless there is a contrary agreement between the 
 venturers.  
It is unclear from 
 the record whether an agreement was ever reached between the parties in regard 
 to authorization of the settlement.  However, under partnership law, Spartanburg 
 does not have to show that Sherwood agreed to contribute to the settlement.  
 Each venturer in a joint venture is an agent of the joint venture, and his or 
 her acts done in the ordinary course of business bind the joint venture.  S.C. 
 Code Ann. § 33-41-310 (1990).  Thus, if the settlement was a valid act of the 
 joint venture, done in the ordinary course of business, Sherwood must contribute 
 its share unless it can show an agreement to the contrary.  S.C. Code Ann. § 
 33-41-510(1) (Supp. 2003).  
There is evidence 
 in the record to support the masters finding that authorization of the settlement 
 was in the ordinary course of business.   Although the venturers never voted 
 on the settlement, Sherwood offered $100,000 toward the settlement, which represented 
 what it believed at the time to be one-third of the joint ventures obligation.  
 Neither Gerald nor anyone else at Sherwood objected to the settlement, and Gerald 
 testified he was present in the courtroom when the settlement was announced 
 on the record in open court. 
Spartanburg made 
 the decision to go forward, believing it had the authority as majority venturer 
 to act for the joint venture.  Harris, acting as counsel for Spartanburg, made 
 the call to Bellamy to authorize the settlement on behalf of the joint venture.  
 Once the authorization was made, the obligation became a valid debt of the joint 
 venture.  Sherwood agreed to pay one-third of any valid joint venture debts 
 under the Agreement.  Although there is some disagreement as to whether Sherwood 
 agreed to fund the settlement, there is no dispute that Spartanburg did not 
 agree that Sherwood would be relieved of its responsibility to pay its part 
 of the settlement amount.  Thus, Sherwood is required under partnership law 
 to pay its share of the settlement.  
Sherwood argues 
 section 1.3 of the Agreement, which provides that a venturer is only liable 
 for debts or obligations incurred pursuant to the Agreement, absolves it of 
 liability for the settlement because it was not an obligation incurred pursuant 
 to the Agreement.  We disagree.   
The settlement 
 did not create a new obligation for the joint venture.  It merely settled a 
 contingent liability.  The lawsuits were a liability of the joint venture, not 
 just Spartanburg, and there was evidence that an adverse judgment could have 
 cost more than $13 million.  Regardless of the amount eventually agreed upon, 
 Sherwood demonstrated it was willing to participate in a settlement by approving 
 a contribution of $100,000.  Therefore, section 1.3 does not remove Sherwoods 
 obligation to pay its share.
Sherwood also argues 
 the settlement payment was not a valid joint venture debt because Spartanburg 
 paid the settlement amount out of its own account for tax purposes.  We disagree.  

Whether or not 
 parties attempt to characterize payments as something they are not for tax purposes 
 does not affect the agreement between the partners.  Bray v. Head, 311 
 S.C. 490, 496-97, 429 S.E.2d 842, 845-46 (Ct. App. 1993).  Spartanburg intended 
 the payment to be on behalf of the joint venture.  In Kuznik v. Bees Ferry 
 Assoc., 342 S.C. 579, 538 S.E.2d 15 (Ct. App. 2000), this court considered 
 several factors in determining whether a promissory note was a valid partnership 
 obligation.  While one of the factors the court considered was how the partnership 
 characterized the debt, the court also considered other factors, including capital 
 calls from the partnership and testimony from a partner and an attorney for 
 the partnership.  Id. at 591-92, 538 S.E.2d at 21-22.  Applying these 
 factors to this case, we find no error in the masters conclusion that the settlement 
 was a valid partnership obligation.
The master further 
 found that Section 33-41-510(1) of the South Carolina Code created a right of 
 contribution in Spartanburg from Sherwood.  This is consistent with our holding 
 in Kuznik, where we upheld a finding of entitlement to indemnity once 
 a valid partnership obligation was found.  Thus, without determining whether 
 the statute itself created a right of contribution, Spartanburg clearly had 
 a common law right of contribution for indemnity.  Additionally, the joint venture 
 Agreement itself creates a right of indemnity in Spartanburg from Sherwood.  
 Pursuant to section 9.4.5 of the Agreement, Sherwood is required to pay its 
 share of the settlement in order to remove the negative capital balance that 
 was created when the joint venture dissolved.  
Because the settlement 
 created a valid joint venture obligation, and Sherwood is required to pay its 
 share under both partnership law and the Agreement, we need not address the 
 quantum meruit claim or the remaining issues in this case.  Accordingly, 
 Sherwood is liable for one-third of the settlement.
AFFIRMED. 
ANDERSON, STILWELL, and SHORT, JJ., concur. 

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.