## 17371

H. M. FARR, Appellant, v. H. G. WILLIAMS, Respondent

(101 S. E. (2d) 488)

*Winfield T. Martin, Esq.,* of Greenville, *for Appellant,*

*Messrs. J. G. Leatherwood* and *C. Victor Pyle,* of Greenville, *for Respondent,*

December 30, 1957.

LEGGE, Justice.

Appellant, acting for himself and the other devisees of the estate of W. B. Farr, owners of a lot with a store building thereon at the intersection of two state highways, leased to respondent the building and part of the lot adjacent thereto. The State Highway Department, desiring to widen one of these highways, condemned the major portion of the leased lot, including the part on which the store building was located. Appellant and his co-owners, and respondent as lessee, were made parties to the condemnation proceeding; appellant and respondent attended it; and the board of condemnation awarded to appellant and his co-owners $6,000.00 and to respondent $2,000.00, "for any and all damages" sustained by them respectively. Appellant noted an appeal, but later abandoned it; and the awards before mentioned were accepted by the respective condemnees.

The lease was in writing, for a term of two years commencing November 1, 1953, and ending October 31, 1955. It provided for rental of $50.00 per month, and specified that the leased property was for use as a retail store for the sale of general merchandise, gasoline and oil. There was no provision for renewal or extension.

Notice of the condemnation was dated February 25, 1955, and the award was dated March 15, 1955. It appears undisputed that in the latter part of March, 1955, respondent was told by counsel for the highway department to vacate the store building by May 1, 1955; that respondent thereafter paid the April rent, notified appellant that he was going to vacate, proceeded to sell out his stock of goods and to dispose of his store equipment; and that he did vacate on April 30, 1955.

The highway department having no use for the building, but requiring its removal, appellant proposed to respondent that he (appellant) would move it to another location some two or three hundred feet distant, and that respondent continue to lease it there. This proposal respondent declined.

Appellant thereafter brought this action against respondent, alleging: the landlord-tenant relationship of the parties

under the written lease; agreement between them to extend the term for an additional two years; the condemnation, requiring the moving of the store building; plaintiff's offer to move it back and continue the lease at the new location; defendant's refusal of this proposition and refusal to pay further rent; and the award made to the defendant in the condemnation as before mentioned. The prayer was for "judgment against defendant in the amount of one thousand three hundred ($1,300.00) dollars, as (a) one thousand ($1,000-.00) dollars, one-half of the award made by the condemnation board, as owner of the premises; and (b) three hundred ($300.00) dollars, as unpaid rent for the remaining six months of the original lease at the stipulated rate of fifty ($50.00) dollars per month".

The defendant, answering: admitted the allegation concerning the written lease and concerning the condemnation of the area on which the store building had stood; alleged that the condemnation proceeding had terminated the lease, and that the plaintiff had, in that proceeding, been fully compensated for all damages sustained by him by reason of the taking; and generally denied the remaining allegations of the complaint.

Appeal is from the order of the trial court directing a verdict for the defendant, the exceptions charging that the trial judge erred: (a) in holding that the condemnation terminated the lease; and (b) in excluding appellant's testimony as to an oral agreement between the parties for extension of the term of the written lease.

The claim made in the complaint for $1,000.00 as "one-half of the award" to respondent need not be considered. Appellant's exceptions do not challenge the judgment of the lower court so far as it relates to that claim. The primary question for our determination is: Did the condemnation terminate respondent's tenancy, as was held by the trial judge? If so, it follows that respondent's liability for rent for the remainder of the term was also terminated thereby.

Orgel, in his Valuation Under The Law Of Eminent Domain (2d Ed., Vol. 1, Sec. 121), discussing apportionment of award in condemnation between lessor and lessee as affected by the question of how far the condemnation terminates their respective rights and obligations, says:

"This question has given the courts more trouble than any other problem of apportionment. Most frequently it takes the form of the question whether or not the lessee is still bound to pay the reserved rent during the unexpired term of the lease, even after the premises have been condemned. If this obligation continues, the principle of indemnity requires that he be paid a portion of the award sufficient to compensate him for his continuing liability. If it ceases, he need not be compensated for this item, but he may still have a claim for the difference between the rental value of the premises and the rent reserved.

"It would pass beyond the bounds of a treatise on valuation to discuss the various and sometimes conflicting rulings of the courts on this question. The holding may be determined by common-law doctrine, by statute law, or by the explicit or implicit terms of the lease. At common-law the prevailing rule, when the entire premises have been condemned or where they are rendered untenantable by the taking of a part, is that the lessee's obligation to pay rents ceases."

*Corrigan v. Chicago*, 1893, 144 Ill. 537, 33 N. E. 746, 747, 21 L. R. A. 212, cited in the briefs of both parties here, was a proceeding in which the City of Chicago, for the purpose of widening a street, had condemned certain leased premises; and the controversy was concerned with the distribution of the sum found to be just compensation between the landowners and their lessees. To quote from the opinion:

"We think that, while the condemnation proceeding may not amount to a technical eviction, where the entire tract of land or lot is taken the effect is to abrogate the relation of landlord and tenant. By virtue of such proceeding, whatever title the tenant has in the land passes to the state or

corporation in whose behalf the right of eminent domain is exercised, and precisely the same is true of the landlord's estate or interest; and the effect is an absolute extinguishment of the right and title of both in, or control over, the subject of the demise. It is, in effect, eviction by paramount right, and has all the force of an eviction by a paramount title, coupled with a conveyance by the owners of their respective interests.  *   *   *

"We are referred to a single case, only, *Foote v. Cincinnati*, 11 Ohio 408, 38 Am. Dec. 737, where it has been held that the tenant's liability to pay rent to his landlord continues unimpaired after condemnation of the entire tract of land included in the lease, or where so much thereof had been appropriated that the residue was incapable of occupation for any purpose consistent with the lease; and that case is placed upon the principle that the right of eminent domain, or the right of appropriating land to public uses, is not a technical incumbrance on the land, and that such appropriation is not an eviction.  *   *   *

"We are of the opinion that the better rule is that where the estate of the landlord in the whole of the demised premises, as well as that of the tenant, is extinguished by the condemnation proceeding, the liability of the tenant to pay rent ceases upon the termination of such estates".

In the light of the foregoing, let us examine the condemnation here. It is clear that the taking was of the greater part of the leased premises, including the store building itself, and rendered them untenantable for the purposes of the lease. We have been referred to no statute of this state expressly providing that in such circumstances the condemnation terminates, or does not terminate, the respective rights and obligations of the parties to the lease. The lease in question contained no provision as to the effect upon it of such condemnation. We must have recourse, then, to the common-law rule in such cases, under which the lease is deemed terminated and with it the lessee's obligation to pay further rent.

Both landowner and lessee were parties to the condemnation proceeding; and the amount awarded to each was expressly in full of "any and all damages" sustained by them respectively by reason of the condemnation. In making the award to the landowner, the board of condemnation must be deemed to have taken into consideration, on the one hand, the actual value of the land taken and any special damages resulting to the landowner by reason of the taking, Code 1952, Section 33-135; on the other hand, any benefits to his property to be derived from the improvement of the highway, *Ibid.,* Section 33-136. But since the result of the condemnation was to make the leased portion of the property untenantable, no such benefits could operate to reduce the award to the lessee. At all events, if the amount awarded to the landowner was not satisfactory to him he had the right to appeal, of which he did not avail himself.

The alleged oral agreement to extend the term of the written lease for an additional two years would have been invalid in the absence of such partial performance as would remove the bar of the statute of frauds, Code 1952, Section 57-306. No such relief from the statute was possible, for the original term had not expired when the condemnation supervened. It was not error to exclude the proffered testimony.

Appellant argues, however, that respondent is estopped to deny the oral agreement because, when respondent was asked by the condemnation board how much longer the lease had to run, he turned to appellant and said, "How much, Mr. Farr?" to which appellant replied "Thirty-two months." Whatever estoppel may have resulted from respondent's failure to deny this statement cannot avail appellant here. Since the award purported to compensate appellant for all his damages, his statement that the lease had thirty-two more months, instead of six, to run, would have tended to increase rather than diminish the amount of his award. Moreover, at least three of the esential elements of equitable estoppel are lacking, *viz.*: (a) reliance

by appellant upon respondent's failure to deny appellant's statement; (b) misleading of appellant thereby; and (c) action thereon by appellant to his detriment. *Gray Cotton Mills v. Spartanburg County Mills,* 139 S. C. 223, 137 S. E. 684; *Masonic Temple v. Ebert,* 199 S. C. 5, at page 17, 18 S. E. (2d) 584; *Davenport v. Miller,* 218 S. C. 56, 61 S. E. (2d) 534; *Adams v. Adams,* 220 S. C. 131, 66 S. E. (2d) 809. But the matter is of no consequence here, for two reasons: (1) in his complaint appellant claimed rent for only six months; and (2) if the condemnation terminated the lease, as we think it did, it matters not whether the term of the lease had six months or thirty-two more to run.

Our conclusion that the condemnation terminated the lease, and with it the reciprocal rights and obligations of the parties to it, is strengthened by *City of Orangeburg v. Buford,* 227 S. C. 280, 285, 87 S. E. (2d) 822, 825. See also Nichols, Eminent Domain, (3rd Ed.), Vol. 4, Section 13.33, at p. 276.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.