0426

Charles MILLER, suing derivatively on Behalf of GRAND STRAND DIVER-
SIFIED, INC., Appellant, v. N. Kent GANDEE, Glendon P. Sprouse and
Grand Strand Diversified, Inc., Respondents.

(328 S. E. (2d) 482)

Court of Appeals

Robert W. Dibble, Jr., and *Robert E. Stepp*, both of *McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, P.A.*, of Columbia, *for appellant.*

*John C. Thompson*, of *Thompson & Henry, P.A.*, of Conway, *for respondents.*

Heard Jan. 28, 1985.

Decided March 26, 1985.

SHAW, Judge:

This shareholder derivative action arises from a corporation's assignment of its major asset. Appellant Charles Miller is a one-third shareholder and was an officer and director of respondent Grand Strand Diversified, Inc. (GSD). Respondents N. Kent Gandee and Glendon P. Sprouse are one-third shareholders and officers and directors of GSD. Miller brought this action on behalf of GSD against Gandee, Sprouse, and GSD to (1) void the corporation's assignment of a leasehold interest in 1.51 acres, together with parking rights on adjoining land, and (2) recover damages for mismanagement of corporate assets. Miller alleges the transaction, authorized at a meeting called without prior notice, is not fair and equitable. The master-in-equity entered judgment for Gandee, Sprouse and GSD. We affirm.

Since this is an equity action, this court can make findings of fact in accordance with its own view of the preponderance of the evidence. *Baptist Foundation for Christian Education v. Baptist College*, 282 S. C. 53, 317 S. E. (2d) 453 (Ct. App. 1984); *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

Grandee and Sprouse hired Miller to locate a suitable site for a nightclub in Myrtle Beach. In June of 1979 the three formed GSD. Its major asset was a lease option agreement on

the 1.51 acre tract, with parking rights on 24 adjoining acres, which Miller had located. In August of 1979, realizing GSD would be unable to attract enough investors in time to file a subchapter S election with the Interal Revenue Service, Gandee, Sprouse, and Miller formed 2001 Enterprises, Inc. Miller acquired the franchise from 2001 of America and attended meetings with an accountant and investors concerning the assignment of GSD's leasehold interest in the nightclub site. In November of 1979 construction began and in April of 1980 the club opened. On January 3, 1980, Miller acknowledged in writing receipt of a letter from the financing bank stating it would take a mortgage in the interest in the 1.51 acre tract as security for a loan to 2001. On January 31, 1980, without giving Miller proper notice, Gandee and Sprouse held a special meeting of GSD's board authorizing assignment of the lease; on February 6, 1980, they recorded the assignment. On February 18, 1980, realizing he would be unable to obtain a favorable contract from 2001 to manage the nightclub, Miller wrote Gandee and Sprouse he would object to an assignment of the lease.

I

Miller attacks the assignment of GSD's interest on the ground it was made other than in the regular course of business at a meeting called with improper notice, in violation of S. C. Code Ann. § 33-19-30(a) (1976 & Supp. 1983) and the By-Laws of GSD Article 4 § 5. The master-in-equity acknowledged Gandee and Sprouse failed to comply with the South Carolina Business Corporations Act and GSD's by-laws; nevertheless, he held Miller is estopped from objecting. We agree.

A shareholder cannot protest action on the ground it was taken at an improperly called meeting when he had already acquiesced in the action. In *Metromont Materials Corp. v. Pennell*, 270 S. C. 9, 239 S. E. (2d) 753 (1977), a corporation leased a tract to a related corporation. Shareholders of the first corporation attacked the transaction on the grounds it had not been properly authorized and constituted an interested director transaction. The Supreme Court held these shareholders were estopped from attacking the lease because they had acquired their shares from directors who had participated or acquiesced in the transaction.

"The right of dissenting [shareholders] to question the validity of a sale may ... be barred by estoppel." 18 C.J.S. *Corporations* § 515 (1939). Moreover, shareholders "may be deemed to have acquiesced in the condition of which [they] complain, to have waived [their] right to object, or to have become estopped by [their] conduct, so as to preclude [them] from asserting rights ... of the corporation." 18 C.J.S. *Corporations* § 569 (1939).

Miller concedes knowing GSD's lease would be assigned to 2001 and we find he attended meetings concerning the assignment. Furthermore, we find no evidence his acquiescence was conditioned on his securing a favorable employment contract. Therefore, we hold Miller is estopped from attacking the assignment on the ground it was authorized at an improperly called meeting.

## II

Miller also attacks the assignment on the ground it was not fair and equitable in accordance with § 33-13-160 (a)(3). This provision reads:

No transaction in which a director or officer has a personal or adverse interest, as defined in subsection (b), shall be void or voidable solely because he is present at or participates in the meeting or his vote is counted ... [i]f ... the transaction is fair and equitable as to the corporation at the time it is authorized or approved, and the party asserting the fairness of the transaction establishes fairness.

It is clear Gandee and Sprouse had a personal interest in the assignment as defined in subsection (b)(2).

The record indicates the 2001 stockholders voted to pay GSD $1,750 per month for 48 months for the assignment; these payments will total $84,000. Gandee, Sprouse, and GSD's appraiser testified he valued the leasehold interest in the 1.51 acre tract, together with the parking rights at $84,000. The parties also argue Miller is estopped from recovering the value of the nightclub they built on the tract; we agree, for "[i]t is a rule almost of universal application that one who stands by and sees another purchase land or enter upon it under a claim of right, and permits such other to make

expenditures or improvements under circumstances which would call for notice or protest, cannot afterwards assert his own title against such person.' " *Piedmont and Nothern Railway Co. v. Henderson,* 216 S. C. 98, 56 S. E. (2d) 740 (1949), (quoting *Southern Railway Co. v. Day,* 140 S. C. 388, 138 S. E. 870 (1926). Therefore, the master correctly held Gandee, Sprouse, and GSD had established fairness.

Miller argues the assigned interest is worth over ■■ $1,000,000 because his appraiser testified a fee simple interest in the 1.51 acre tract is worth $77,000, the parking rights are worth approximately $250,000, and the club building is worth approximately $900,000. The master correctly disregarded the testimony on the 1.51 acre tract because it relates to a fee simple interest instead of a leasehold interest. The master correctly disregarded the testimony on the parking rights because Miller's appraiser conceded not knowing about the restrictions the lease places on these rights, or how many acres are available for parking. Miller argues the master incorrectly disregarded the testimony on the club building based on *Shealy v. South Carolina Electric and Gas Co.,* 278 S. C. 132, 293 S. E. (2d) 306 (1982). In *Shealy* the circuit court held the party *denying* compensation for improvements should be estopped by its acquiescence and the Supreme Court reversed. We hold the master correctly disregarded Miller's appraiser's testimony on the building because in this case the party *claiming* compensation for improvements is estopped by its acquiescence.

Affirmed.

CURETON and GOOLSBY, JJ., concur.