**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Lady Beaufort, LLC & Tideland Realty, Inc.,
Respondents/Appellants,

v.

Hird Island Investments, Inc., Sherwood N. Fender,
Addison D. Fender, Martha B. Fender, William B.
Bowen, Lady Kemmerlin, LLC, Brickyard Holdings, Inc.
and A&K Holding Co., LLC, Defendants,

AND

William M. Bowen, Third-Party Plaintiff,

v.

James S. Kerr and Matt Trumps, Third-Party Defendants,

Of Which Hird Island Investments, Inc. and Sherwood N.
Fender are the Appellants/Respondents.

Appellate Case No. 2018-001969

———————————

Appeal From Beaufort County
Marvin H. Dukes, III, Circuit Court Judge

———————————

Unpublished Opinion No. 2022-UP-251
Heard April 7, 2022 – Filed June 8, 2022

———————————

**REVERSED**

H. Fred Kuhn, Jr., of Moss Kuhn & Fleming, PA, of Beaufort, for Appellant/Respondents.

Andrew K. Epting, Jr. and Jaan Gunnar Rannik, both of Epting & Rannik, LLC, of Charleston, for Respondent/Appellants.

**PER CURIAM:** This cross appeal arises from a failed real-estate transaction between Lady Beaufort, LLC (Lady Beaufort) and Hird Island Investments (Hird Island). In its appeal, Hird Island and its principal, Sherwood Fender, appeal the Master's findings that: (1) Hird Island was liable for breach of contract; (2) Hird Island and Fender were liable for negligent misrepresentation and breach of contract accompanied by a fraudulent act; and (3) Hird Island and Fender owed damages to Tideland Realty, Inc. (Tideland Realty), the broker, for the failed transaction. Hird Island and Fender also appeal the Master's award of attorney's fees to Lady Beaufort. In its cross appeal, Lady Beaufort asserts the Master should have awarded the entire amount of attorney's fees it requested. We reverse the Master's rulings that Hird Island breached its contract with Lady Beaufort and that Hird Island and Fender are liable for negligent misrepresentation and breach of contract accompanied by a fraudulent act, and thus, we reverse the award of attorney's fees to Lady Beaufort.

## I. Facts

In the underlying case, Hird Island entered into a real estate transaction (the Contract) to sell the property at 9 Sams Point Rd. to its neighbor, Lady Beaufort, for $260,000. The Contract provided closing would take place within seven days of the conclusion of the thirty-day due diligence period, which ended on October 1, 2013, making the final date for closing October 8, 2013. Because of issues regarding title insurance, the Contract did not close by October 8, 2013, and on October 10, 2013, Hird Island sold 9 Sams Point Rd. to Inverness, LLC (Inverness) for $245,000.

Months later, Lady Beaufort bought 9 Sams Point Rd. from Inverness for $285,000 and filed a summons and complaint against Hird Island for breach of contract. The complaint was eventually amended to add Fender, Hird Island's principal, and allege additional claims for breach of contract accompanied by a fraudulent act, fraudulent

transfer, and negligent misrepresentation. Hird Island counterclaimed for breach of contract. The lawsuit was referred by consent to the Master for disposition, and it proceeded to trial on March 1, 2017. The Master ruled Hird Island breached the Contract with Lady Beaufort, and it found Fender liable for negligent misrepresentation and breach of contract accompanied by a fraudulent act, and therefore, Fender was personally liable for any damages resulting from the breach.

The Master awarded Lady Beaufort $87,578.56, including $25,000 in actual damages plus prejudgment interest and attorney's fees through the date of the trial in the amount of $53,924.41, and awarded Tideland Realty $17,500.17. Hird Island and Fender filed a motion to reconsider the order, and after a hearing on the motion, the Master filed an order granting Hird Island and Fender's motion to reconsider as to the award of attorney's fees and reopening the record to allow the parties to submit evidence as to attorney's fees. After holding a hearing on attorney's fees, the Master filed an order amending its prior order to only allow Lady Beaufort to recover attorney's fees up until the date it obtained the property from Inverness, reducing its attorney's fee award to $17,857.00. This cross-appeal follows.

## II.    Breach of Contract

The Master found Hird Island breached the contract in four ways: (1) by failing to take steps to allow Lady Beaufort to obtain title insurance; (2) by selling the property to another buyer on October 10, 2013, while the Contract was in full force and effect; (3) by failing to convey marketable title due to its administrative dissolution status and a small tax lien; and (4) by failing to deliver a certificate of tax compliance to Lady Beaufort in derogation of its duty to convey the property subject to all government statutes, specifically S.C. Code Ann. § 12-54-124 (2014). We hold these rulings are controlled by errors of law.

1.   First, the Master erred in finding Lady Beaufort's failure to obtain title insurance triggered an automatic five-day extension of the closing deadline due to "an unsatisfied contingency through no fault of either party." The "time is of the essence" contract between Lady Beaufort and Hird Island for undeveloped land was not contingent upon financing. Paragraph ten of the contract stated, "Brokers recommend Buyer have Property surveyed, title examined, and appropriate insurance (including owner's title) effective at Closing." This unambiguous language placed the burden of both investigating the requirements of title insurance and obtaining title insurance on Lady Beaufort. Nowhere in the Contract do the parties make the transaction contingent upon the ability of Lady Beaufort to obtain title insurance. We cannot read a provision into the contract that was not bargained

for by the parties, and we cannot turn a recommendation by the broker into a contingency of the Contract. *See S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 655, 667 S.E.2d 7, 13 (Ct. App. 2008) ("Where an agreement is clear and capable of legal construction, the court's only function is to interpret its lawful meaning and the intention of the parties as found within the agreement and give effect to it. We are without authority to alter an unambiguous contract by construction or to make new contracts for the parties. A court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." (citation omitted)). Furthermore, as we will discuss below, there was no impediment to the transfer of marketable title in this case; therefore, we cannot find Lady Beaufort's failure to perform its own duty of obtaining recommended title insurance by the closing deadline was "through no fault of either party." *Id*. ("When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary, and popular sense."). Under the Contract, Hird Island had no duty to remedy the issue of Lady Beaufort's inability to obtain title insurance, and Lady Beaufort's failure to obtain title insurance did not trigger the automatic five-day extension of the closing deadline. Therefore, we find the closing deadline of this contract was October 8, 2013, and Hird Island did not breach the Contract by either (1) declining to take last-minute steps to remedy Lady Beaufort's title insurance problem or (2) selling the land to another buyer on October 10, 2013.

2. Next, the Master erred in ruling Hird Island's dissolution status and $514.01 lien for unpaid taxes on the land prevented the passage of marketable title. It is undisputed that on October 4, 2013, Hird Island delivered a general warranty deed and other closing documents to Lady Beaufort. It is also undisputed that at the time of the Contract, Hird Island was in administrative dissolution status in Georgia, its state of incorporation. Finally, it is undisputed a $514.01 tax lien was placed on the property by Beaufort County during the thirty-day due diligence period of the Contract and was not discovered by either party by the time of the scheduled closing date.

In South Carolina, "marketable title is one free from encumbrances and any reasonable doubt to its validity." *Gibbs v. G.K.H., Inc.*, 311 S.C. 103, 105, 427 S.E.2d 701, 702 (Ct. App. 1993). "It is a title which a reasonable purchaser, well-informed as to the facts and their legal significance, is ready and willing to accept." *Id*. While we agree with the Master that the contract unambiguously required conveyance of marketable title, Hird Island's dissolution status did not prohibit it from conveying marketable title to Lady Beaufort. Both South Carolina

and Georgia have statutes providing a company in administrative dissolution may convey property. *See* Ga. Code Ann. §§ 14-2-1405, 1421(c) (2020) ("A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs [including '[d]isposing of its properties that will not be distributed in kind to its shareholders'.]"); S.C. Code Ann. §§ 33-14-105(a)(2), 210(d) (2006) ("A corporation dissolved administratively continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs [, including 'disposing of its properties that will not be distributed in kind to its shareholders'.]"). Accordingly, Hird Island's dissolution status did not affect the marketability of title, and the Master erred as a matter of law in finding Hird Island's dissolution status was a breach of its duty to convey marketable title.

As to the small tax lien, paragraph four of the Contract states, "Seller agrees to convey marketable title with a properly recorded general warranty deed free of encumbrances and liens." This language is unambiguous. Hird Island was required to discharge the $514.01 tax lien to perform its duty to convey marketable title under the Contract. *See Scalise Dev., Inc. v. Tidelands Invs., LLC*, 392 S.C. 27, 34, 707 S.E.2d 440, 444 (Ct. App. 2011) (finding general warranty deed could not be used to convey marketable title when there was a title defect). However, as a matter of law, there can be no breach of Hird Island's contemporaneous duty to convey marketable title so long as Hird Island discharged the $514.01 tax lien with the proceeds from closing. *See Robeson-Marion Dev. Co. v. Powers Co.*, 256 S.C. 583, 586, 183 S.E.2d 454, 455 (1971) (finding as "long as the seller is prepared with the use of the purchase money to obtain substantially contemporaneous release of the outstanding liens, he has the ability on that score to render performance concurrently with the buyer" at closing). Accordingly, Hird Island's failure to discharge the lien before it received the closing proceeds from Lady Beaufort cannot amount to breach of contract. Because Hird Island never received closing proceeds from Lady Beaufort, it did not breach its duty to convey marketable title for failure to discharge the small tax lien.

3. Finally, the Master erred in ruling Hird Island breached its duty to follow all applicable government statutes in conveying the land when it refused to deliver a certificate of tax compliance to Lady Beaufort. In the order finding breach of contract, the Master specifically concluded, "Pursuant to S.C. Code Ann. § 12-54-124[1], if a piece of property constitutes more than a majority of the assets of

---

[1]S.C. Code Ann. § 12-54-124 states in its entirety:

a company, a certificate of tax compliance must be obtained by the seller from the South Carolina Department of Revenue." Nothing in S.C. Code Ann. § 12-54-124 requires the seller to obtain a certificate of tax compliance in order to convey the majority of its assets. Instead, the statute transfers tax liability of the seller to the purchaser when the purchase occurs. *See Peake v. S.C. Dep't of Motor Vehicles*, 375 S.C. 589, 598, 654 S.E.2d 284, 289 (Ct. App. 2007) ("When a statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed, and this court has no right to impose another meaning.") Accordingly, Hird Island's failure to obtain this certificate was not a breach of its duty to follow the law and cannot be a basis for breach of contract. *See Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008) (stating "the proper interpretation of a statute is a question of law," which the court reviews de novo). Furthermore, the parties did not explicitly bargain for the issuance of a certificate of tax compliance, and because we cannot read a provision into the Contract that was not bargained for, we hold Hird Island's refusal to procure this certificate was not breach of contract. *See M & T Enters. of Mt. Pleasant*, 379

> In the case of the transfer of a majority of the assets of a business, other than cash, whether through sale, gift, devise, inheritance, liquidation, distribution, merger, consolidation, corporate reorganization, lease or otherwise, any tax generated by the business which was due on or before the date of any part of the transfer constitutes a lien against the assets in the hands of a purchaser, or any other transferee, until the taxes are paid. Whether a majority of the assets have been transferred is determined by the fair market value of the assets transferred, and not by the number of assets transferred. The department may not issue a license to continue the business to the transferee until all taxes due the State have been settled and paid and may revoke a license issued to the business in violation of this section.
>
> This section does not apply if the purchaser receives a certificate of compliance from the department stating that all tax returns have been filed and all taxes generated by the business have been paid. The certificate of compliance is valid if it is obtained no more than thirty days before the sale or transfer.

S.C. at 655, 667 S.E.2d at 13 ("We are without authority to alter an unambiguous contract by construction or to make new contracts for the parties."). We acknowledge that Lady Beaufort's closing attorney was attempting to zealously represent his client by insisting on the certificate, attempting to obtain title insurance, and trying to clean up the dissolution issue. We also acknowledge that Hird Island's flexibility and cooperation were lacking. But we conclude Hird Island had no contractual duty to accommodate Lady Beaufort's extra-contractual requests, no matter how reasonable or customary they may seem.

4. We reverse the Master's ruling that Hird Island breached the Contract with Lady Beaufort, and therefore, we find it owes no damages to Lady Beaufort or Tideland Realty under a contract theory of liability. *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491, 732 S.E.2d 205, 209 (Ct. App. 2012) ("The elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach."). Furthermore, because we find Hird Island did not breach the Contract with Lady Beaufort, we reverse the Master's ruling that Hird Island and Fender are liable for breach of contract accompanied by a fraudulent act. *See Hotel & Motel Holdings, LLC v. BJC Enterprises, LLC*, 414 S.C. 635, 654, 780 S.E.2d 263, 273–74 (Ct. App. 2015) (holding a party cannot maintain a claim of breach of contract accompanied by a fraudulent act if there has been no breach of contract).

### III.   Negligent Misrepresentation

5. We reverse the Master's ruling that Hird Island and Fender are liable to Lady Beaufort for negligent misrepresentation. In its order, the Master found Fender and Hird Island made two false representations to Lady Beaufort. The first was that Hird Island and Fender represented they were willing close on "October 7, 2013, with full knowledge of the dissolution of Hird Island and the issue it presented for the title insurance company." The second was that Hird Island and Fender, through Hird Island's attorney, continued to negotiate terms to close the contract with Lady Beaufort when, in reality, Hird Island was contracting to sell the land to another buyer. Initially, we question whether the record supports the Master's findings that these statements were false. However, we find it does not matter, as neither of these representations, be they false or not, can lead to liability under negligent misrepresentation. As a matter of law, under this unambiguous Contract, Hird Island had no duty to either: (1) solve Lady Beaufort's title insurance problem or (2) sell the property to Lady Beaufort after Lady Beaufort failed to transfer the proceeds of the sale to Hird Island by the closing deadline. *M & T Enters. of Mt. Pleasant*, 379 S.C. at 655, 667 S.E.2d at 13 ("The construction of a clear and unambiguous contract presents a question of law for the court."); *AMA Mgmt. Corp. v. Strasburger*, 309

S.C. 213, 222, 420 S.E.2d 868, 874 (Ct. App. 1992) (stating one of the elements of negligent misrepresentation is that "the defendant owed a duty of care to see that he communicated truthful information to the plaintiff"). Accordingly, we reverse the Master's ruling that Hird Island and Fender committed the tort of negligent misrepresentation in this case.

## IV. Attorney's Fees

6. We reverse the award of attorney's fees to Lady Beaufort and Tideland Realty. Paragraph twenty-seven of the Contract provides if one party defaulted, the other party could "[p]ursue any remedies available to [it] at law or in equity" and "[r]eceive attorney's fees and all other direct costs of litigation if [it] prevails in any action against [the defaulting party]." Because we find Hird Island and Fender did not breach the Contract, Lady Beaufort and Tideland Realty are no longer the prevailing party in their claims against Hird Island and Fender, and thus, they are not entitled to attorney's fees under the unambiguous language of the Contract.

**REVERSED.**

**GEATHERS and HILL, JJ., and LOCKEMY, A.J., concur.**